[Cite as *Ulery v. Ulery*, 2013-Ohio-4951.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

LISA B. ULERY                              :

     Plaintiff-Appellee                  :                C.A. CASE NO.    2013 CA 39

v.                                         :                T.C. NO.    08DR437

JEFFREY S. ULERY                           :                (Civil appeal from Common
                                            Pleas Court, Domestic Relations)

     Defendant-Appellant              :

                                                                                               :

. . . . . . . . . .

## O P I N I O N

Rendered on the      8th      day of      November      , 2013.

. . . . . . . . . .

VALERIE JUERGENS WILT, Atty. Reg. No. 0040413, 333 N. Limestone Street, Suite 104, Springfield, Ohio 45503
        Attorney for Plaintiff-Appellee

P. J. CONBOY II, Atty. Reg. No. 0070073, 5613 Brandt Pike, Huber Heights, Ohio 45424
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}    Jeffrey Ulery appeals from a judgment of the Common Pleas Court of

Clark County, Domestic Relations Division, which denied his motion for modification of his

spousal support obligation.

{¶ 2} For the following reasons, the judgment of the trial court will be affirmed.

{¶ 3} In December 2008, Mr. Ulery pled guilty to one count of conspiracy to commit aggravated murder and was sentenced to four years of imprisonment.

{¶ 4} In January 2009, Mr. Ulery and his wife, Lisa, were divorced after 27 years of marriage. One of their children was still in high school at the time of the divorce, but by May 2009, the child had graduated and reached the age of majority. At the time of the divorce, the trial court found that Mr. Ulery was voluntarily unemployed due to his "self-induced" incarceration, which "voluntarily reduced his earning ability." Based on his income in 2006 and 2007, and his expected income (prior to his legal troubles) in 2008, the court imputed income to Mr. Ulery of $98,819.[1] Among other provisions, the divorce decree ordered Mr. Ulery to pay spousal support of $1,500 per month for nine years. In the division of marital assets, the court awarded Ms. Ulery a disproportionate share of the assets, for which Mr. Ulery received a "credit" against his spousal support obligation for 31 months. The court delayed the requirement that Mr. Ulery make spousal support payments until August 2011, holding that his spousal support "credit" applied to most of the period during which he was incarcerated. The court retained jurisdiction over the issue of spousal support.

{¶ 5} Mr. Ulery appealed from the trial court's final judgment and decree of divorce, challenging several provisions, including its award of spousal support and the

---

[1]In the decree of divorce, the court discussed the imputation of income in awarding child support, rather than spousal support, but it incorporated this finding into its discussion of spousal support. In his motion for modification, Mr. Ulery compares his post-incarceration income to the imputed income.

property division. We affirmed the trial court's judgment. *Ulery v. Ulery*, 2d Dist. Clark No. 2009-CA-12, 2011-Ohio-5211.

{¶ 6} In early 2012, Mr. Ulery was released from prison and filed a motion in the trial court for "modification of spousal support and accompanying property division." Mr. Ulery argued that he had not made the income imputed to him ($98,819) since 2007, that Ms. Ulery's income had increased since the divorce, and that the court should reconsider the property division "due to the parties['] current financial situations."

{¶ 7} While Mr. Ulery's motion was pending, Ms. Ulery filed a motion requesting a qualified domestic relations order to facilitate some aspects of the property division set forth in the divorce decree, which had been delayed by various legal proceedings since the time of the divorce. Mr. Ulery's request that the trial court revisit the property settlement seems to have been based, in part, on the fact that all of the assets had not yet been distributed. The trial court granted Ms. Ulery's request for a QDRO in August 2012.

{¶ 8} In its order, the court characterized the "'credits' afforded to Mr. Ulery against his spousal support obligation" as a lump sum award of spousal support, rather than a property division. The court held that Mr. Ulery's request to modify the property division, which effectuated the payment of spousal support while he was in prison, constituted an impermissible request for a retroactive modification of spousal support. The court found that Mr. Ulery's February 2012 request for modification of spousal support could seek such modification only prospectively.

{¶ 9} While Mr. Ulery's motion was pending, the court, on its own initiative,

asked the parties to address the applicability of Senate Bill 337, the "Second Chance Law," which went into effect in September 2012. According to the trial court, the law was designed to "reform and limit collateral sanctions that may affect or hinder an ex-inmate's reentry into society after serving a prison term." The court ultimately concluded that the law's provisions were inapplicable to spousal support.

{¶ 10} The court further concluded that no modification of spousal support was warranted, because there had been no change of circumstances that was not contemplated at the time of the divorce and because Mr. Ulery's earnings and "significant assets" enabled him to satisfy the obligation.

{¶ 11} Mr. Ulery appeals from the trial court's judgment, raising one assignment of error:

> THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FOR MODIFICATION OF SPOUSAL SUPPORT.

{¶ 12} Mr. Ulery contends that the trial court abused its discretion in concluding that Am.Sub.S.B. 337 did not apply to spousal support and in denying his request for a modification of spousal support.

{¶ 13} Am.Sub.S.B. 337 amends or enacts more than 70 sections of the Revised Code, many of which are irrelevant to the issues presented herein. However, it amended R.C. 3119.05(I)(2) (R.C. 3119.05 is titled "Requirements when court computes child support") as follows:

> Unless it would be unjust and inappropriate and therefore not in the best

interests of the child, a court or agency shall not determine a parent to be voluntarily unemployed or underemployed and shall not impute income to that parent if either of the following conditions exist:

\*\*\*

\*\*\* The parent is incarcerated or institutionalized for a period of twelve months or more with no other available assets, unless the parent is incarcerated for an offense relating to the abuse or neglect of a child who is the subject of the support order \* \* \*.

Relying on this amendment, Mr. Ulery argued that spousal support should be treated similarly to child support, because it "can have the same effect on an individual's ability to transition back into society," and that his obligation, in particular, was "definitely a hinderance [sic] to his transition back into society."

{¶ 14} The court rejected Mr. Ulery's argument that the court should extend the Second Chance Act's proscription on findings of voluntary unemployment or underemployment and imputation of income to spousal support. In so holding, the trial court noted that Am.Sub.S.B. 337 specifically refers to child support (R.C. 3119.05), but contains "no similar provision \* \* \* relating to the issue of spousal support" awards or modifications (R.C. 3105.18). The court also noted that, even if the Act applied to spousal support, it would not apply to Mr. Ulery, because he was awarded "substantial marital assets" from which he could pay spousal support, and he still had those assets at the time of the hearing.

{¶ 15} Although we understand Mr. Ulery's argument that the "collateral

consequence" of having to pay spousal support may "hinder an ex-inmate's reentry," that was not the policy decision made by the legislature. Mr. Ulery's argument that the trial court should have extended the new child support provision (R.C. 3119.05(I)) to spousal support would have required to trial court to graft the child support provision of Am.Sub.S.B. 337 onto another unrelated statute which was not mentioned in the Act. Such an expansive reading exceeds the province of the trial court. The trial court reasonably presumed that the legislature would have expressly included such a provision if it had intended for the law to affect spousal support. The trial court did not err in rejecting this argument.

{¶ 16}   None of this is to say that a court should not consider a spouse's earning ability and assets, as those may have been affected by his previous incarceration. In this regard, Mr. Ulery also contends that the trial court abused its discretion in refusing to modify his spousal support obligation because: 1) following his incarceration, he had been  unable to obtain employment at the income level imputed to him (approximately $98,000), 2) having been released from prison, he now must pay for his own living expenses, and 3) Ms. Ulery's income had increased since the divorce. Mr. Ulery also contends that the court should have based its decision on his actual post-incarceration income of $35,000, rather than its determination that he "could make" $50,000 per year.

{¶ 17}   A trial court's decision on a motion to modify spousal support is reviewed for an abuse of discretion. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218, 450 N.E.2d 1140 (1983).   If a decision is unreasonable, arbitrary or unconscionable, it must be reversed as an abuse of discretion. *Id.*

{¶ 18} The modification of a spousal support award requires a finding that a substantial change of circumstances has occurred "that had not been contemplated and taken into account by the parties or by the court at the time of the prior order." R.C. 3105.18(E); *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, ¶ 31.

{¶ 19} The trial court's initial finding that Mr. Ulery had "voluntarily reduced his earning ability" by engaging in criminal activity was no less valid after he served his sentence than it had been earlier. The fact that Mr. Ulery did not obtain employment at a rate comparable to what he had earned prior to his conviction was contemplated at the time of the divorce decree.

{¶ 20} The court's conclusion that Mr. Ulery was able to earn $50,000 after his release was also reasonable. Mr. Ulery testified that he worked for MediBag Company, Inc., as an independent contractor and that he earns an average of $700 to $800 per week, but that it varies and can be as much as $1,200 per week. He also had substantial assets. The following findings by the court were supported by the record:

> * * * Mr. Ulery presented testimony that he earns between $700.00 to 800.00 per week which extrapolates to gross income of approximately $39,000.00 per year. Upon cross-examination, however, he also acknowledged that he indicated at his prior deposition that he could make between $48,000.00 and $50,000.00 per year at his current job *if he chose to do so.* He also testified at the hearing herein that he is contemplating a relocation to the state of Nevada to work for a venture capital group which he is hopeful will result in significantly greater income than that which he currently realizes.

It is also significant to note that Mr. Ulery has, at his disposal, signifincant assets appearing in the form of stock, bank accounts, investment accounts, and retirement accounts. Specifically, Mr. Ulery testified that he has stock with Bob Evans with an approximate fair market value of $11,000.00; stock with Huntington Bank with an approximate value of $14,000.00; stock with Boston Capital which was a $12,000.00 initial investment and the current fair market value being unknown. He also has a checking account at Huntington Bank with an approximate balance of $21,000.00. Mr. Ulery also has an Edward Jones retirement account with an approximate balance of $40,000.00. * * *

During the course of his incarceration, Mr. Ulery spent in excess of $40,000.00 for investment ventures as well as attorneys fees. Further, on May 7, 2012, he purchased a Toyota Camry automobile for $30,649.00 plus tax. Despite the foregoing expenditures, Mr. Ulery has never made a payment toward his spousal support obligation despite the fact that his actual monthly payments should have begun August 6, 2011. It is clear that Mr. Ulery had sufficient assets to begin making his periodic payments even though he was still incarcerated at that time. (Emphasis added.)

{¶ 21} Additionally, the court noted that Mr. Ulery does not help with any expenses related to the parties' college-age children, whereas Ms. Ulery does; although neither party was legally obligated to help with these expenses, the court found that those expenses were "significant" and "should not be simply ignored." The court also observed that Ms. Ulery had fewer assets at the time of the hearing than at the time of the divorce,

because Mr. Ulery's "objections, appeals, and motions for recusal" allowed him to avoid the division of the parties' financial accounts and because he had not made spousal support payments.

**{¶ 22}** With respect to Ms. Ulery's income from working as a teacher, the court found that she was "already realizing her full earning capacity," meaning that she was unlikely to see substantial increases in her income in the future. Ms. Ulery's gross annual income had increased approximately $9,000.00 since the divorce, which she attributed to "incremental pay raises."

**{¶ 23}** Based on the evidence presented, the trial court reasonably concluded that there had been no change of circumstances that had not been contemplated at the time of the divorce and that Mr. Ulery had ample assets and income from which to meet his spousal support obligations. The court did not abuse its discretion in denying Mr. Ulery's motion to modify spousal support.

**{¶ 24}** The assignment of error is overruled.

**{¶ 25}** The judgment of the trial court will be affirmed.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Valerie Juergens Wilt
Patrick J. Conboy II
Hon. Thomas J. Capper